**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**ARTHUR F. JONES,**

                  **Plaintiff,**

**-v-**

**OPTION ONE MORTGAGE, et al.,**

                  **Defendants.**

**Case No. 3:10-CV-307**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (Doc. #13) AND TERMINATING THIS CASE**

---

This matter comes now before the Court on Defendants' Motion To Dismiss Or, Alternatively, for Summary Judgment. (Doc. #13.) This Motion is now fully briefed and ripe for decision.

The Plaintiff in this matter is Arthur F. Jones ("Jones"). The Defendants are Sand Canyon Corporation f/k/a Option One Mortgage Corporation ("Option One") and American Home Mortgage Servicing, Inc. ("AHMSI"). Other Jane and John Does are listed as Defendants but none have been identified.

Jones' Complaint lists seven (7) causes of action, all against both of the Defendants. His First Cause of Action is for invasion of privacy. His Second Cause of Action is for intentional infliction of emotional distress. His Third Cause of Action is for tortious interference with a contract. His Fourth Cause of Action is for violation of the federal Fair Debt Collection Practices Act (the "FDCPA"). His Fifth Cause of Action is for violation of the federal Fair Credit Reporting Act (the "FCRA"), and his Sixth Cause of Action is for civil conspiracy. His Seventh Cause of Action is for trade libel.

The Complaint now before this Court was originally filed on July 5, 2010, in the Common Pleas Court of Montgomery County, Ohio. It was subsequently removed to this Court by the Defendants on July 30, 2010. (Doc. #1.)

This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the substantive allegations of Plaintiff's Complaint can fairly be read to indicate that the amount in controversy exceeds $75,000. This Court also has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the Complaint presents a case arising under the laws of the United States. Finally, this Court has supplemental jurisdiction over Jones' common-law claims pursuant to 28 U.S.C. § 1367.

If matters outside the pleadings are presented, as is the case here, a motion to dismiss may be converted to a motion for summary judgment if all parties are given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(b). In this case, Jones was on notice that a motion for summary judgment had been filed when the motion was filed and has responded accordingly. Therefore, the Defendants' Motion will be treated as a motion for summary judgment.

The relevant procedural background will first be set forth. This will be followed by the relevant factual background, the standard for considering motions for summary judgment and an analysis of Defendants' Motion for Summary Judgment.

## RELEVANT PROCEDURAL BACKGROUND

Jones originally filed a case in this Court in May of 2008 (the "May 2008 Case"). The Case No. was 1:08-cv-353. The Second Amended Complaint, the operative complaint, in the

May 2008 Case, was against the same Defendants as here, except for the Jane and John Does, and included identical claims for invasion of privacy, intentional infliction of emotional distress, tortious interference with contract, violation of the federal FCRA, and civil conspiracy. The Second Amended Complaint also included a declaratory judgment claim, but did not include an FDCPA claim or a trade libel claim. The factual allegations in the Second Amended Complaint are virtually identical to the factual allegations in the claim now before the Court.

While the May 2008 Case was pending, the Parties completed discovery and the Defendants filed a Motion for Summary Judgment. Jones then moved to voluntarily dismiss his claims without prejudice. On February 17, 2010, the Court dismissed Jones' FCRA claim, the only federal claim, with prejudice and dismissed the remaining state-law claims without prejudice. (Case No. 1:08-cv-353, Doc. #70.) On July 5, 2010, Jones refiled his case in the Court of Common Pleas of Montgomery County, Ohio and the Defendants removed the action back to this Court.

## RELEVANT FACTUAL BACKGROUND

Jones is in the business of purchasing properties, repairing them, and then either renting the properties or selling them at a profit. Option One was formerly a residential mortgage lender and servicer. (Declaration of Dale Sugimoto ("Sugimoto Decl.") ¶ 2 Jul. 23, 2010.)

Between 2003 and 2007, Jones entered into nine (9) promissory notes with Defendant Option One. (Sugimoto Decl. ¶ 2.) These promissory notes were secured by mortgages on properties owned by Jones. (Id.) In addition, Option One serviced two of Jones' other mortgage loan accounts. (Id.)

Under the terms of the Notes and Mortgages, Jones was required to make his monthly

loan payments on the first day of each month. (Deposition of Arthur Jones ("Jones Dep.") Exs. 8-11, 13-17 Jul 9, 2009.) However, Jones set up his automatic bank payments so that his Option One loans would not be paid until the fifth or sixth day each month. (Jones Dep. 172-73; Sugimoto Decl. ¶ 14.) As a result, Option One representatives would call Jones between the first and sixth day of each month regarding his late loan payments. (Jones Dep. 313.)

The Mortgages also require Jones to maintain property insurance on each of the mortgaged properties and to provide Option One with proof of such insurance. (Jones Dep. 219-20, Exs. 8-11 and 13-17.) Requiring a borrower to provide such proof of insurance is a necessary and reasonable requirement to ensure that a lender's interest in the property is protected. (Jones Dep. 219-20; Deposition of Brian McKenzie ("McKenzie Dep.") 88-89 Jul. 2, 2009.)

If the mortgagee, Jones in this case, fails to maintain and provide proof of insurance, the mortgator, Option One in this case, is entitled to obtain insurance coverage at the mortgagee's expense and the cost of the insurance coverage becomes additional debt, termed an escrow amount. (Jones Dep. Exs. 8-11, 13-17.) Escrow amounts for expenses beyond loan interest and principal are due on the same day as monthly payments. (Id.) Monthly payments are first applied to escrow items and then to loan interest and principal. (Id.)

On May 7, 2007, Option One advised Jones that it had not received proof of insurance for several of his mortgaged properties. (Jones Dep. 260-64, Ex. 19.) One week later, having not received Jones' proof of insurance, Option One obtained insurance coverage, termed "forced placed insurance," for those mortgaged properties for which it had not received any proof of insurance. (Sugimoto Decl. ¶ 4.) Option One then applied the cost of the insurance to Jones' accounts and billed him monthly for these escrow amounts. (Id.)

Despite these added escrow amounts, Jones did not increase the amount of his payments. (Jones Dep. 299, Sugimoto Decl. ¶ 4.) Thus, the payments made by Jones were insufficient to cover both the escrow amounts and the monthly interest and principal payments. (Sugimoto Decl. ¶ 4.)

In August of 2007, Option One began sending Jones letters informing him that the mortgage payments he had made were insufficient to cover the full amounts due. (Id. ¶ 6.) Jones called Option One's customer service department on August 14, 2007, to ask about the additional amounts due. (Id. ¶ 7.) Jones was told that the amounts due were for the forced placed insurance. ( Id.) When Jones stated that he had his own insurance coverage, he was advised to send in the required proof of insurance. (Id.) Option One also communicated with Jones' insurance agent to fax the declarations page of Jones' insurance policy as proof of insurance. (Id.) However, Option One did not receive the proof of insurance. (Id.)

In September and October of 2007, Option One sent Jones additional letters informing him of his insufficient payments. (Jones Dep. 272-73, Exs. 21, 22.) These letters advised that, if they were the second such notice received by the mortgagee, Option One would not accept any further partial payments until the full amount due has been paid. (Id.)

In November of 2007, Jones failed to pay the full monthly amount due on several of his mortgages and Option One refused to accept the partial payments. (Sugimoto Decl. ¶ 9.) Further, because Jones had not paid the full amounts due in September, October or November, Option One representatives called him regarding the shortfalls. (Id. ¶ 10.) The calls were placed per account, so Jones received different calls for each separate mortgage. (Id.) Jones testified that, during this period, he sometimes received between 20 and 30 calls per day.

-5-

On November 20, 2007, Option One received proof of insurance on the properties that were the subject of the forced placed insurance. (Sugimoto Decl. ¶ 11.) Option One then cancelled the forced placed insurance and reimbursed Jones for the payments that had been applied to the escrow items. (Id.)  However, because Jones had underpaid his loans in November of 2007, Option One reported to the credit bureaus that five of Jones' accounts were thirty days past due. (Id. ¶ 12.)

As with all of his loans, Jones never paid his home mortgage loan by the first of the month as required by the terms of the Note and Mortgage. (Jones Dep. 172-73; Sugimoto Decl. ¶ 14.) As a result, Option One representatives called Jones each month regarding these delinquencies. (Jones Dep. 313, Sugimoto Decl. ¶ 14.)

In October of 2007, Jones' bank deleted his automatic payment information for his home mortgage account and failed to make Jones' Note payment to Option One. (Sugimoto Decl. ¶ 15.) As a result, Jones did not make his payment until October 23, 2007. (Id.) Because Jones was 22 days late in making this payment, Option One representatives called him multiple times regarding this delinquency. (Id.) In December of 2007, Jones was again late by 26 days in making the payment on the Note used to finance his home. (Id.) Option One again attempted to contact Jones about this delinquency. (Id.)

In February of 2008, Jones learned that Option One had reported some of his accounts as delinquent. (Jones Dep. 194-95.) Jones' mortgage broker had obtained Jones' credit report and learned that Jones' credit score was approximately 544. (McKenzie Dep. 149-53.) Jones' mortgage broker advised Jones that his credit score was not high enough for Jones to qualify for a mortgage loan at that time. (Jones Dep. 197.)

As a real estate investor, Jones had consistently reported negative income and was thus only eligible for a couple of types of mortgage loans because he could not meet the debt-to-income ratio requirement for other loans. (McKenzie Dep. 96-98, Jones Dep. 128-30.) Specifically, Jones was only eligible for "stated income" loans and "no ratio" loans, which did not require the borrower to prove income. (Id.)

In early 2008, the credit score requirements for "stated income" loans and "no ratio" loans had increased to 660. (McKenzie Dep. 136-37, 155-56, 162.) From June of 2006 through 2007, Jones' credit score had ranged from approximately 620 to 643. (Jones Dep. 136-45.)

In the Spring of 2008, Jones stopped making any payments on his loans with Option One. (Jones Dep. 253-54, 322-23; Sugimoto Decl. ¶ 16.) As a result, Option One began foreclosure proceedings on some of Jones' properties, including his residence.

In April of 2008, AHMSI purchased certain of Option One's assets, including the right to service Jones' loans. (Sugimoto Decl. ¶ 17.) Prior to this time, AHMSI had no involvement with any of Jones' loans. (Id.) By the time AHMSI had purchased the servicing rights, Jones had already stopped making his monthly payments. (Jones Dep. 253-54, 322-23.) Finally, all of the credit reporting issues occurred before AHMSI purchased the servicing rights. (Id. 209-10, 218.)

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

-7-

R. Civ. P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that

party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

## ANALYSIS

Option One seeks summary judgment on each of Jones' claims. Thus, each will be addressed seriatim.

## **Invasion of Privacy**

Jones alleges that the Defendants illegally invaded his privacy when they conducted a

campaign to harass and torment him by repeatedly contacting him and by refusing to correct knowingly false information. The Defendants argue that Jones does not have an invasion of privacy claim.

The right of privacy is invaded by (a) an unreasonable intrusion upon the seclusion of another such that it causes mental suffering, shame or humiliation to a person of ordinary sensibilities; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public. *Welling v. Weinfeld*, 866 N.E.2d 1051, 1053, 1059 (Ohio 2007).

First, Jones cannot prove an unreasonable intrusion upon his seclusion. As for refusing to correct false information, Jones has not identified any facts from which the Court could conclude that reporting him as delinquent on his loans is false information.

In the context of debt collection, a creditor has a right to take reasonable action to pursue the debtor and persuade payment. *Housh v. Peth*, 133 N.E.2d 340, 344 (Ohio 1956). Option One has identified evidence which shows that their actions were reasonable. Jones has identified no evidence otherwise.

In fact, Jones has identified no acceptable Rule 56 evidence regarding any of his claims. The closest he comes is to identify two depositions but he does not identify where in those depositions is the specific evidence to support his arguments.[1]

Jones correctly argues that the Court must assume that all facts proffered by the nonmoving party, him in this case, must be accepted as true. However, he does not identify any

---

[1]The nonmoving party must present some type of evidentiary material in support of its position and a court is not obligated to search the record for such evidence.

-10-

specific facts. He merely refers the Court to his unverified Complaint, his supporting documentation, his extensive interrogatory answers and production, his deposition and his "hours upon hours" of deposition testimony. However, the Court, of course, is not required "to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Sponseller*, 889 F.2d at 111.

Jones' only argument is that this court cannot determine as a matter of law that the Defendants' actions were not unreasonable. However, in *Society Bank, N.A. v. Kellar*, 579 N.E.2d 717, 720 (Ohio Ct. App. 1989) and *Charvat v. NMP, LLC*, 703 F. Supp.2d 735, 743 (S.D. Ohio 2010), the courts determined as a matter of law that the defendants' conduct was reasonable and did not constitute harassment or an invasion of privacy.

Second, Jones cannot prove an "appropriation of name or likeness" claim. This type of invasion of privacy claim is limited to situations where a plaintiff's name or likeness is used to indicate that the plaintiff endorses another's product. *See Shibley v. Time, Inc.*, 341 N.E.2d 337, 339 (Ohio Ct. App. 1975). Jones has not presented evidence that his name or likeness was appropriated.

Third, Jones cannot prove a privacy claim based upon unreasonable publicity given to his private life. This claim requires proof that the defendant gave publicity to a true private matter and that such publicity (a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public. *See Killilea v. Sears, Roebuck & Co.*, 499 N.E.2d 1291, 1294 (Ohio Ct. App. 1985). This claim fails for at least three reasons. First, this claim only applies if Option One gave publicity to a <u>true</u> public matter and Jones claims that the credit information was <u>false</u> and not true. Second, the evidence shows that Option One gave the credit information

-11-

only to credit reporting agencies and not the public at large. Thus, the credit information was not publicized. Third, publication of true facts about Jones' payment history is not highly offensive to a reasonable person.

Finally, Jones cannot prove a false light privacy claim. A false light privacy claim requires proof that a defendant gave publicity to a matter involving a plaintiff that placed the plaintiff in a false light before the public, that the false light would be highly offensive to a reasonable person and that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter. *Welling*, 866 N.E.2d at 1059.

Jones' false light privacy claim fails for at least two reasons. First, there was no publicity. Second, Option One reported only accurate information to the credit reporting agencies and, under a false light privacy claim, the statement must be untrue. *Id.* at 1057.

Jones has identified no evidence that satisfies any of the requires of an Ohio invasion of privacy claim. Therefore, there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law on Jones' invasion of privacy claim.

## Intentional Infliction of Emotional Distress

Jones' emotional distress claim is based upon his allegations that Option One reported inaccurate information to the credit reporting agencies. (Compl. ¶¶ 24-27.) To prevail on this claim, Jones must prove that: (1) the Defendants intended to cause emotional distress; (2) the Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency; (3) the Defendants' actions proximately caused injury to Jones; and (4) the mental anguish Jones suffered is serious and of such a nature that no reasonable person could be expected to endure it. *Ashcroft v. Mt. Sinai Medical Center*, 588 N.E.2d 280, 284 (Ohio Ct. App.

1990).

Jones' intentional-infliction-of-emotional-distress claim fails because he has not identified evidence that supports several of the elements of this claim. First, Jones has not presented evidence that Option One intended to cause emotional distress or knew or should have known that its actions in reporting Jones' credit status would result in emotional distress. Second, accurate credit reporting can hardly be said to be extreme or outrageous. Third, Jones has not presented evidence that an injury was proximately caused by Option One's actions. When Jones decided to obtain a loan in early 2008, the credit score requirement for the types of loans that he could obtain was 660. Jones conceded that, for the year and a half prior to that time, he had never had a credit score higher than 643. So, if Option One had never reported his credit status, he still would not have qualified for the type of loan for which he was eligible.

Again, Jones identifies no evidence regarding this claim. He does, however, indicate, without identifying any, that there is evidence that the Defendants knew of their improper actions, yet continued doing them. This, of course, remains an assertion unsupported by Rule 56 evidence.

Jones has not presented evidence that satisfies three of the four elements of an intentional-infliction-of-emotional-distress claim. Therefore, there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law on Jones' intentional-infliction-of-emotional-distress claim.

### Tortious Interference With a Contract

Jones alleges that he was unable to enter into contracts because of the Defendants' conduct. (Compl. ¶¶ 30-31.) Presumably Jones' Complaint is referring to Option One's credit

reporting because it is Option One's credit reporting to which Jones refers in his Response to the Defendants' Motion for Summary Judgment.

To recover on a tortious-interference-with-contract claim, a plaintiff must prove: (1) the existence of a contract; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of the contract's breach; (4) lack of justification; and (5) resulting damages. *Kenty v. Transamerica Premium Insurance Co.*, 650 N.E.2d 863, 866 (Ohio 1995).

This claim fails for at least four reasons. First, Jones has not identified evidence of any actual or prospective contract between himself and any mortgage lender. Second, Jones has not identified evidence that Option One had any knowledge of any contract or potential contract that in which he was or may have been involved. Third, Jones has not identified any evidence showing that Option One procured the breach of any contract in which he was a party. Finally, Jones has identified no evidence showing that Option One was not justified in reporting his payment history.

In his Response, Jones asserts that McKenzie specifically said that he was confident that a loan could have been arranged but for the Defendants' credit reporting, but that he admitted that he did not know for sure. This statement is not enough by itself and it is worth even less because Jones has not specifically identified its source in Rule 56 evidence.

Jones has not identified evidence that supports his tortious-interference-with-contract claim. Therefore, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on Jones' tortious-interference-with-contract claim.

## **FDCPA Violations**

Jones alleges that the Defendants violated the FDCPA by (1) pursuing a debt that

allegedly did not exist, and (2) by pursuing a foreclosure proceeding as to his personal residence when Defendants allegedly had no right to do so. The Defendants respond that only the loan secured by Jones' home residence can be the subject of an FDCPA claim and an FDCPA claim with regard to Jones' home fails.

The FDCPA places certain restrictions on debt collectors. 15 U.S.C. § 1692b. However, the restrictions only apply to consumer debts because the term "debt" is defined in the FDCPA as "any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. ¶ 1692a(5).

Jones argues that "it is sufficient to state that Jones' investment properties were not only personal investments and that the rental income he had received from these personal investments was primarily used to pay the debt from the loans." This, of course, is supported by no evidence, but, if true, only further convinces the Court that the debts on the investment properties do not satisfy the definition of what constitutes a debt for FDCPA purposes.

Thus, only Jones' allegations regarding the loan secured by his home are actionable under the FDCPA. The analysis then turns to Jones' FDCPA claim regarding the loan secured by his home.

The Defendants first argue that Jones' FDCPA claim is time-barred. An FDCPA claim must be brought within one year of the date of the purported violation. 15 U.S.C. § 1692k(d). In this case, all of the alleged violations occurred in 2007 and 2008. Since Jones' FDCPA claim was not filed until July 5, 2010, it is time-barred.

-15-

Jones argues that his claim is not time-barred because there are ongoing and repeated violations,[2] because his original complaint in the May 2008 Case was filed in May of 2008, and because equitable tolling should apply. However, Jones offers no evidence of ongoing and repeated violations and the Court is aware of none, Jones' complaint in the May 2008 Case did not include an FDCPA claim and Jones does not present evidence, or even argument, regarding all of the factors to be considered for equitable tolling.[3]

The Defendants next argue that the FDCPA does not apply to foreclosure actions to the extent that Jones' FDCPA claim applies to Option One's foreclosure actions. Jones provides an interesting background on the FDCPA but offers no legal basis for application of the FDCPA to foreclosure action. This Court agrees that the FDCPA does not apply to foreclosure actions because a foreclosure action is an attempt to enforce a purported security interest and not an attempt to collect a debt. *See Glazer v. Chase Home Finance*, LLC, Case No. 1:09-cv-01262, 2010 WL 1392156 at *8 (N.D. Ohio Jan. 21, 2010).

The Defendants' next argument is that Option One is not a "debt collector" under the FDCPA. Jones responds that Option One is considered a debt collector under the FDCPA.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection

---

[2]A continuing violation occurs when there are continuing unlawful acts and not when there are only continuing adverse effects from the original unlawful acts. *See Kovacic v. Cuyahoga County Department of Children and Family Services*, 606 F.3d 301, 307 (6th Cir. 2010).

[3]A plaintiff's decision to voluntarily dismiss claims and then refile them after the one-year limitations period had run is insufficient to warrant equitable tolling. *See Ruth v. Unifund CCR Partners*, No. 5:08CV2689, 2009 WL 585847 at *9-10 (N.D. Ohio Mar. 6, 2009), *aff'd*, 604 F.3d 908 (6th Cir. 2010).

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003)(quoting 15 U.S.C. § 1692(e)). Thus, a debt collector is one who attempts to collect the debt owed to another.

Since Option One was attempting to collect a debt owed to itself, Option One is not a "debt collector" as defined by the FDCPA and thus is not subject to the requirements placed by the FDCPA on "debt collectors." Jones' only response is that decisions, such as Montgomery, are "most likely" in violation of the FDCPA.

Option One's final argument is that neither it nor AHMSI violated any provision of the FDCPA. Jones' allegations are premised entirely upon his assertion that the Defendants were not entitled to charge him for forced placed insurance. However, there is no evidence that the Defendants charged Jones for forced placed insurance on his home residence.

In sum, Jones has not presented evidence that either of the Defendants violated the FDCPA. The FDCPA applies only to Jones' home residence. Jones' claim regarding his home residence is time-barred and without merit. Therefore, there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law on Jones' FDCPA claim.

## **FCRA Violations**

Jones' FCRA violations have previously been adjudicated and dismissed with prejudice by this Court. Since the FCRA allegations in Jones' Complaint that is now before this Court are the same as those in his Second Amended Complaint that was previously before this Court, Jones is bound by the previous dismissal with prejudice. Accordingly, this claim is, again, dismissed with prejudice.

**Civil Conspiracy**

The Defendants argue that Jones' civil-conspiracy claim fails as a matter of law. Jones identifies no specific facts but proffers that "it is inappropriate for this court to rule on the facts when they are to be judged by a jury at trial."

In Ohio, a civil conspiracy consists of: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act. *Universal Coach, Inc. v. New York City Transit Authority, Inc.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993).

Jones' civil-conspiracy claim fails for at least two reasons. First, there is no underlying unlawful act. Based upon the facts presented, the Defendants' actions are not unlawful. Second, Jones has shown no combination of two or more persons. Because AHMSI is Option One's successor and they serviced Jones' loans sequentially and not at the same time, AHMSI was not involved in any credit reporting regarding Jones and did not begin to service Jones' accounts until May of 2008. Therefore, there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law on Jones' civil-conspiracy claim.

**Trade Libel**

Jones alleges that the Defendants committed libel by reporting allegedly false information to the credit reporting agencies. (Compl. ¶ 57.) The Defendants respond that Jones cannot satisfy all of the elements of a trade-libel claim.

In Ohio, libel is "a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade." *A & B-Abell Elevator Co. v. Columbus/Central Ohio Building and Construction Trades Council*, 651 N.E.2d 1283, 1289-

90 (Ohio 1995)(citing *Becker v. Toulmin*, 138 N.E.2d 391, 395 (Ohio 1956)). Ohio also provides

for the defense to libel of "conditional" or "qualified" privilege. *Id.* at 1290(citing *Hahn v.*

*Kotten*, 331 N.E.2d 713, 718 (Ohio 1975)). A "conditional" or "qualified" privilege to publish an

alleged defamatory statement exists if: (1) the statement is made in good faith; (2) with an

interest to be upheld; (3) limited in scope to its purpose; (4) at a proper occasion; and (5)

published in a proper manner to proper parties. *Prime Time Mortgage Co. v. Flagstar Bank*,

FSB, Case No. 3:03CV337, 2005 WL 1076171 at *9 (S.D. Ohio May 4, 2005)(citing *Hanley v.*

*Riverside Methodist Hospital*, 603 N.E.2d 1126, 1131 (Ohio Ct. App. 1991)).

Jones cannot prove the first element and basis of his trade-libel claim because the credit

reporting at issue was accurate and correct and he has not identified evidence to the contrary.

Further, even if Jones could establish a prima facie case of trade libel, the Defendants are entitled

to "conditional" or "qualified" immunity because Option One's credit reporting statements were

made in good faith and with the belief that the information was true. Further, Option One shared

a common business interest with others making and using the credit reporting systems. The

statements regarding Jones' credit were limited to information about Jones' payment history and

were made on a proper occasion, in a proper manner and to proper parties. Jones has not

identified evidence to the contrary. Therefore, there are no genuine issues of material fact and

the Defendants are entitled to judgment as a matter of law on Jones' trade-libel claim.

## CONCLUSION

There are no genuine issues of material fact and the Defendants are entitled to judgment

as a matter of law on Jones' claims for invasion of privacy, intentional infliction of emotional

distress, tortious interference with contract, violation of the FDCPA, civil conspiracy and trade

-19-

libel. Further, Jones' claim for violation of the federal FCRA have already been adjudicated by this Court.

Thus, the Defendants' Motion for Summary Judgment (doc. #13) is GRANTED.  Since each claim has either been dismissed or summary judgment granted in favor of the Defendants, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE and ORDERED** in Dayton, Ohio this Twelfth day of October, 2010.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record